of America, and Mary J. Garland, in his official capacity as Attorney General of the U.S. Mr. Kornredier for the About, Mr. Fusa for the About. When it comes to regulating speed, courts don't afford laws simply because the government has promised to apply them responsibly. As the Supreme Court made clear in the United States v. Stevens, the First Amendment protects against the government, does not leave us at the mercy of noblesse oblige. This principle is implemented in a couple of ways. First, laws regulating speech must be drafted with narrow specificity. And second, courts exercise extreme caution when examining laws regulating what the Supreme Court has called the vast democratic forms of the Internet. Various laws intended to regulate online speech have been validated patiently applying these principles. These include the Communications Decency Act, the Child Online Protection Act, and the Child Phonometry Prevention Act. FOSTA represents the latest attempt to regulate Internet speech since these seminal cases. And yet, remarkably, with one minor exception I hope to get to later, neither the government nor the District Court even cites these cases. Instead, the government treats FOSTA as a garden variety aiding and abetting law without regard to whether or not it regulates speech. Now there are a couple of problems with this. First, FOSTA is not a garden variety aiding and abetting law. The government tries to defend the statute principally by rewriting it. And secondly, even if FOSTA could be so characterized, it is nonetheless constitutionally deficient because its terms are overly broad, undefined, and show a vast amount of protected speech. And that's the other remarkable thing about this case. FOSTA-chewing effects were predicted, they were immediate, and they were widespread across the Internet. And this impact has never been disputed by the government. In fact, the District Court agreed that appellate's claims encapsulate the incentives created by this section of FOSTA. Well, how do we know... Your briefs and the Minkus briefs talk about a lot of speech that is stopped in reaction to the statute. But how do we know how much of that speech is in fact covered by the statute as opposed to risk aversionists on the part of a lot of these businesses? Because if the statute is read as an essentially aiding and abetting provision, then I assume you would say your client's conduct doesn't fall. The PayPal account, the massage, business ads do not fall under the statute. Does... Has Craigslist said that all of this speech that is shut down did fall within the statute? Because that's part of the question here is whether, for overbreath at least, whether there's substantial overbreath. I'm not sure we can equate substantial overbreath with substantial reactions to a statute without more. And that's where I'm really struggling to understand what is covered if it's read as an aiding and abetting provision. What is covered that shouldn't be covered? Right. And that's the problem with using broad and expansive language that relates to speech but then doesn't define what speech is covered. And there are three reasons why I try to interpret FOSTA as an aiding and abetting law. Can we just get more to the practical question of, is it your view that you had two individuals here, the one who does the date, rates the date, and then the one with the massage business? Is it your position that their speech is perfectly lawful under the First Amendment yet is covered by the statute or they're afraid it's covered by the statute? I think that's because of the indeterminate language. They can't be sure that their speech isn't covered. And if it's read as an aiding and abetting statute, criminal aiding and abetting, would their conduct be covered? I believe they would be acquitted, but that's part of the problem. No, no, no. Not acquitted. Would they? As a matter of law. Not acquitted. It would be, you know, you dismiss the indictment on its face. Right away judged because this is not aiding and abetting. I do not believe their conduct amounts to aiding and abetting. But because of the way FOSTA is structured, both by using expansive language for what could be covered, as well as removing protection for intermediaries, that their speech nonetheless gets censored because people rationally react to an overly broad regulation of speech by censoring that speech. And that's what the platforms have done in response to the modification of Section 230. To demonstrate substantial overbreadth. We'll have discussions about whether it should be read this way. But let's just assume it is read narrowly as all sort of aiding and abetting conduct consistent with traditional criminal law definitions of FAST. And to decide that it's overbroad, we can't go, well, you had big words that you narrowed down to aid and abet. To establish that it's overbroad, you would have to show that even as an aiding and abetting statute, it would capture substantial amounts of lawful protected speech. So if we're in that world where it's treated as an aiding and abetting statute, how do I know that this statute would nonetheless be overbroad because it would nonetheless capture protected speech? Well, I want you to start to push back on the notion of assuming that it can be interpreted as an aiding and abetting statute. Therein lies the problem. No, but I know you want to push back on that, but then you're not going to answer my question. I really do want to know that if we're in that world, is it still substantially overbroad or is it only substantially overbroad because of the indeterminacy of whether this is in fact an aiding and abetting statute? The way in which statutes are interpreted gives latitude to apply beyond what is the principal concept of aiding and abetting, and that's what's true and false. And it's imperative to all of the other statutes that have been cited by both sides currently that this is substantially different from an aiding and abetting statute. And that's clear from even the language of false in Section 2421A when you compare it to that section of the Criminal Code into which it was inserted. It was part of Chapter 117 of the Criminal Code governing transportation of illegal activity in related countries, the Mann Act, which has been on the books since 1910. And in every other provision, you have language that expresses what the crime is that is being prosecuted. So, for example, Section 2422B criminalizes using the mail or facility or means of interstate commerce in a way that knowingly persuades, induces, entices, or coerces the individual. Similarly, Section 2422A applies to anyone who knowingly persuades, induces, entices, or forces the individual to travel interstate commerce. What's missing from FALSA in Section 2421A is that language of what the crime is that puts people on notice of what they would be aiding and abetting. The way that the statute reads is to say that anyone who owns, operates, or manages, or even attempts to own, operate, or manage an interactive computer service with that intent, with the intent to promote or facilitate prostitution, is guilty of a federal felony. And, you know, it doesn't define what speech, what actions by that interactive computer service would violate the law. It's that indeterminacy where it says, this can't be treated like the aiding and abetting laws that the government cites in the criminal research. We give seven examples of aiding and abetting laws that put them on our brief. Every one of them includes that language that defines what the crime is. And here, it's basically speaking with that intent. And for that reason, this isn't a garden of writing, aiding and abetting. It simply makes no sense to interpret it in that way. That's also true of the laws that the government cites under the Multicultural Code. If you look at any of those laws, they include the description of what it is that constitutes a violation. And that's the problem with overly broad or indeterminate laws that purport to regulate speech. And that's the reason why the Supreme Court has always required that those laws be drafted with narrow specificity. And that's absolutely what's lacking here. The government suggests that we should interpret these laws using rules of statutory construction, and we've done that. And when you apply those rules of statutory construction, none of them support the government's reading of lawsuit. The plain meaning rule, the plain meaning of lawsuit in case law and in legal dictionaries means to make easier, not that aiding and abetting. And getting back to, I believe, your original question of why this is substantially overbroad, the government is defaulting what FOSTA's legitimate sweep is by constantly talking about classified ad websites and talking about Backpage.com. But as the parent of this court made clear the last time this case was before it, FOSTA is not limited to classified advertising, and it's not limited to bad actor websites. Congress specifically chose broader language that applies to a broad range of protected speech. How would you, and this is not a rhetorical question, I'm curious, how would you write a law that does what you just said? To say we're going to outlaw bad actor websites sounds awfully vague, so maybe we'll start with this. Do you think it's possible for Congress to ban Backpage.com? Constitutionally possible? I think it is possible to write a constitutional statute, and just walk and let me say it's not my job to do Congress's work, and the Supreme Court made that clear in United States v. Plano. There was a point in your brief where you seemed awfully sympathetic to Backpage.com, which was a pretty nefarious website. I guess I'm glad to hear you say that you think Congress can ban Backpage.com, and I wonder how that law would read different than this. Right, and I think it would come closer to a constitutional enactment if Congress had a longer list of verbs. So, for example, a travel act applies to acts that promote, manage, establish, carry on, or facilitate the promotion of unlawful activity. So, it's a 24-21-A-A-A-A that way? I'm sorry, what did you say? If they had a longer list of verbs, and the sort of act-type language that they have in the companion provisions in this section, then it would be constitutional, simply because we've only got promote or facilitate that is the constitutional problem? We would have to look at the final product that Congress came up with, but that was the analysis that the Supreme Court did in Williams, when it looked at the Protect Act. You just said we have to look at the language they came up with, but Judge Millett gave you the language. If Congress wrote the same language that Judge Millett mentioned, which I think is the same language that's in the other statutes you were mentioning, would that be constitutional? I think that would come closer, because it would at least serve to narrow those terms. As the Supreme Court said, if you look at those... Coming closer isn't constitutional. The ones that were to make the Protect Act was ultimately constitutional, and it was ultimately constitutional because of those additional verbs that didn't, you know, that went beyond promote and facilitate. So if we were to read this statute as no broader, in terms of the verbs, than that statute, then I guess there would be no constitutional problem here. Well, there would be the problem that the court would be rewriting the statute. I know, but assume that... I know you don't agree with the government's statutory interpretation, but if we were to No, I don't believe so, Your Honor, because again, for prosecutions going forward, you would still have that statutory language that courts would have to interpret. And then I'm back to my original question, which is, is it possible to write law that does not violate the First Amendment, but does ban Backpage.com? Well, again, Congress did have the option when it adopted this law. The government has spent a lot of time talking about how we have to read the law in light of...read the statute in light of background law. And here, when Congress was adopting Fawcett, it was reading it with a background of law under Williams that said the terms promote and facilitate standing alone in isolation are capable of widespread means. They then opted to leave out those words. This is a hypothetical, but I want to be sure we're fair to you. Whoever writes the opinion, I think right now the opinion could say that the plaintiffs concede that Congress can ban Backpage.com without violating the First Amendment, but the plaintiffs cannot explain how Congress can do that. I think if you wrote a statute that said it violates the law to operate an interactive computer service to conduct a prostitution business online, that would be a... You're going to put an intent requirement in there too, aren't you? Yes. But Backpage.com wasn't running the prostitution business. It was a board. It was equivalent of a bulletin board for sex traffickers to advertise. That is the allegation that has yet to be proven at trial. The allegations that contained in the government brief continue all sorts of allegations about trafficking, the fact that it's not charged with the theft. Apart from that, the question is whether or not a law could be drafted, and I think it could. I don't think the transactional terms in the Travel Act talk about basically getting involved in the business or the purposes of the First Amendment or speech that is indical to that criminal activity. But that's not what Congress adopted. I understand your argument there. Let me pivot to the ex post facto claim and the question of standing. And after answering that question, I see that I'm sort of... I'm intruding on my time for rebuttal. We'll give you time for rebuttal, so you can keep answering questions. I'll be answering questions. The only defendants in this suit are federal defendants. And the only parties that can bring a prosecution or civil suit against your clients using the ex post facto language. In other words, for the conduct that your clients engaged in before FOSTA, the only people who can hold them accountable for that are state prosecutors and private civil litigants. Since the federal defendants are the only defendants in this case, how do you... How could issuing an injunction against the federal defendants help you in this area? Well, and that's the point that we tried to make in the brief. And that is the district court dismissed that claim simply by focusing on the injunctive relief portion. But we, in our complaint, sought both declaratory and injunctive relief. So then that leads us to the California v. Texas case that the Supreme Court somewhat recently decided. And it was pretty clear. It said that... It said, no standing if the only relief requested is a declaration that the statutory provisions of the plaintiff's attack is unconstitutional. How do you get around that? I think under Saga v. California, it says that ex post facto law shall not be passed. And that is expressed provision of the Constitution in Article I, Section 9. And combined with the language of the declaratory judgment, it says that any court in the United States may declare the rights of other legal relations of any interest to the parties seeking such declarations. Whether or not such further relief is or could be sought still needs the court's latitude to grant declaratory relief in respect to the ex post facto claim. Imagine that, you know, it's almost a truism that ex post facto law can't be passed. The Constitution says it can't be passed. But the question is, who can you sue and have standing to sue, challenge an ex post facto law? And, you know, if you picked a random name in the phone book and then sued them and then argued in court correctly that you've been injured by the ex post facto law, you wouldn't have standing because the random name in the phone book that you've chosen to sue, relief against that defendant can't redress the injury that we would all concede you have from the ex post facto law. By the same token, if Congress adopted a law that simply said that states can now pass ex post facto criminal laws and, you know, you had to wait for a state then to adopt an ex post facto law, you have simply allowed Congress to adopt a law that is expressly forbidden by Congress. I don't know that that law is expressly forbidden because it's not an ex post facto law. And what is the harm in waiting for someone to actually do something to hurt you? Because of the chilling fact that this has had on platforms across the Internet, also doesn't operate just in isolation. It's got three different provisions that create new criminal penalties that activate the ability to impose existing state laws on behavior that existed before or took place before the law was adopted. And we can impose all of those conditions on intermediaries with a maximum chilling effect. So the very existence of the law has created a chilling effect.  And civil cases have already gone forward alleging violations of FOSTA under actions that took place before the law was adopted. Have any states, anyone in the amicus brief said there's only been one federal prosecution under FOSTA? I see what you mean by that 2421A or do you even mean 1591 or 1519? Sorry? When there's only one prosecution under FOSTA, does that mean one prosecution under 2421A or does that include no prosecutions under the amendments to 1591? Have there been any state prosecutions under FOSTA that you're aware of? Not that I'm aware of. Which actually speaks to whether or not this law is either necessary or even the least restrictive means of addressing the issues that Congress sought to address, both under the strict scrutiny analysis, which requires it to be the least restrictive means, and the question of whether or not it is substantially overbroad because it is more broad than necessary. The fact that those other laws preexisted. And more broad than necessary gets us back to the how, what Congress could write. And there, I just want to make sure I'm clear, the main complaint with 2421A is that by using the verbs promote or facilitate prostitution, those do not have the same narrowing language as something like 2422 with persuades, induces, entices, coerces, those types of verbs, or more transactional verbs like Williams. That's the problem? That's the problem with 2421A. It lacks those transactional verbs to identify the overdraft and vagueness of the other provisions as well. And then on top of that, by simultaneously stripping away immunities from intermediaries and periods of third-party speech, that is a problem. So for 2421A, I just want to make clear, the objection is just to, you would say, the breadth of the verbs promote or facilitate, and it's not an objection that the only actus reus is operating an interactive computer service. Well, that's right. And it's basically the law constitutes operating an online computer service with that intent. Right. That's why I thought your response would have been, no, we want more verbs, and we actually would like a criminal actus reus. Well, we want the actus reus to be defined, certainly. Well, it's defined here in 2421A. It's defined as owned, managed, or operating an interactive computer service or attempting or conspiring to do that. So there is a defined actus reus. It's just like, as you said, it's operating a computer with a bad intent. And, you know, this is why Supreme Court has always required statutes that regulate speech to be defined with precision, because essentially this amounts to saying that you are speaking online with bad intent. The intent is defined by using words. You might not even be speaking. You might just be owning a computer service with bad intent. And it's verified even further from the intent element. It validates its own in the words of Section 2421A, attempting to own, operate, or manage an interactive computer service. All of that gets it further and further removed from actually defining what kind of speech is being regulated. And that is the device in these kinds of laws, particularly when you are regulating a medium as widespread with as many participants as the Internet. Both those vague terms, both in terms of direct action and their impact on intermediaries, make for a vast effect, which has occurred. It's not just people overreacting or hallucinating that they are at risk. You have all kinds of mainland intermediaries and you have small operators all restricting their speech because of the rational calculation that they face nuclear option criminal penalties for what they may allow to be posted online or for their own. That's the problem of a law that attempts to regulate speech with the breadth and imprecision of a law like FOSTA. And I want to make sure, because I had interrupted you, did you get to say what you wanted to say about your response to the government's argument that this should be read as an 18 in abetting statute? I want to make sure you had a chance to get it. I want to make sure you got the opportunity, because you had said you wanted to address the government's argument that this should be read as 18 in abetting language or traditional criminal understandings of promote prostitution or facilitate. I just want to make sure you got a chance to, because I could cut you off trying to get another answer. I think at this point, I said what I wanted to say. I was close to your questions and in addition to what we said in the briefs, and I look forward to seeing what Mr. Buzia has to say, because I'm sure I'll have a few words to add at that point. Any questions? Thank you very much. We will give you some time for people. Good morning, and may it please the court, Joe Buzia on behalf of the government. As the case is now narrowed, there is agreement between all the parties that there is no constitutional problem with a statute that prohibits aiding and abetting the underlying transactional crime of prostitution, where that is a crime in the jurisdiction in which it takes place. Where did you get that concession? Because I will say I read the plaintiff's brief to sort of imply that, but when the plaintiff was pushed today, I think he refused to concede that and said even if it's aiding and abetting law, it still chills too much. I'm sorry, I took the opposite. I thought he said if it was aiding and abetting, then it can be prohibited by statute. We cite a number of cases in which the Supreme Court says that each name of a crime is categorically exempting from the First Amendment. He's provided no argument saying why that kind of case wouldn't resolve the case if statute covers only aiding and abetting. I'll ask him to comment on that, of course. I don't know what you mean when you say even if it's an aiding and abetting law. Isn't that the question? In my mind, it's not an aiding and abetting law. We know how to write them when we want to. This doesn't look like anything that I understand to be an aiding and abetting law. So I'm preparing this that immediately tells me the government's got great concerns that the statute as actually written has problems. So let's make it something that it's not. Let's call it aiding and abetting, and maybe we can cause the court to believe that the reach of the statute is limited because we've called it something that it's not. There's nothing to suggest that it's aiding and abetting. It doesn't look like an aiding and abetting law. There's no legislative history that says it's an aiding and abetting law. And so my view as someone preparing the case is you just made something up, which would work for you if you could convince me that you're right, but it's not what the statute says. Respectfully, Your Honor, we do disagree, and for several reasons. That's what the statute says? We disagree, disagree, disagree. So we disagree with the position you just laid out that this is not an aiding and abetting statute. And so if I could just lay house the key features that we think show that this statute is limited to traditional principles of accomplished liability. So first, if you just take the canonical definitions of aiding and abetting from Black Law Dictionary, it's to facilitate the commission of a crime or to promote its accomplishment. The same with a phase and the model of penal code. And the Supreme Court in Honolulu said that the term facilities has an equivalent meaning to terms like aid and abet. So first, just starting from the definitions of those terms. What did the Supreme Court say about promote in Williams? In Williams. That's what the Supreme Court said, right? Right. So in Williams... So already we're falling away from where you'd like to be in aiding and abetting. The Supreme Court has flatly said promoting is, that's what you've got, and that's all we essentially have here, promote and facilitate. The Supreme Court has said that's not enough, that's a problem. That's all you've got. I'm sorry, Your Honor. The Supreme Court said in Williams that promote on its own in a vacuum could be thought to have a very broad definition or a narrow definition focused on traditional principles of accomplished liability. The Supreme Court there said look to the statute in context. When they look to the context in whole, that is, are there other words that limit the scope of the offense? The Supreme Court said in Williams there are other limiting words. And so therefore, even though promote would be a problem if that's all was there, it's not a problem here because we can, in context means there are other words which limit the sweep of the statute. So Your Honor, the Supreme Court in Williams didn't say the only contextual feature that could limit a word like promote to its narrow definition would be the Moscator Associates Canon. It didn't say only that context would limit the word. It just said look to context, and that was the relevant context there. Here we do have important textual and contextual indications that we're talking about transactional crimes, not general advocacy in favor of prostitution. So first I start with the idea that we're talking about a criminal statute. We're talking about criminal intent. Then I turn to the phrase in the statute, promote the prostitution of another person, not promoting the concept of prostitution. Then there's the aggregated offense, so promoting the prostitution of five or more persons. That's clearly transactional. And lastly... Oh, what? What did you just say? I'm sorry. I'm sorry. In the aggregated offense, in 2421A paragraph B, the statute speaks of promoting the prostitution of five or more persons. It just further underlines that we're talking about underlying criminal transactions, not the concept of prostitution as a whole. And lastly, and I don't think there's a better given response to this, is the affirmative defense in paragraph E. Before you... Please hold that. I do want to... I'm sorry, but I just want to make sure I understand something here. General promotion of prostitution is not here. But if someone actively promotes on their website the legalization of prostitution for the state of California, how is that not promoting the prostitution of five or more persons in California? It's just promoting prostitution in general as a concept. No, it's not. It says, I want... Here's all my friends who are prostitutes in California. Here's 20 of them. I want to make it legal for them to engage in prostitution. So I'm advocating for this law. How does that not promote the prostitution lawfully? I'm going to list all of my friends who are prostitutes. Here's the list of their names. How is that not promoting... Just straightforward reading of the text. I feel very strongly they should have a right to prostitute if they want to. They want to do it more. They'll be able to do it more if it's lawful. So under a traditional dictionary definition where promote would just be encouragement in the least or sort of any degree of promotion, maybe one can consider that being promotion of the prostitution of a large number... I don't think it's necessary to say that under a dictionary definition that it's promote. It's not a maybe. It does. No, but I guess my core point is that... They want the super narrow black law dictionary. I want that. I think it's pretty clearly what Congress was intending. But even if you disagree with me about that... How do we know Congress intended the black law dictionary definition? Contrary to some sessions having with Judge Edwards, there actually is legislative history saying that we're invoking traditional notions of accomplished liability. What was that legislative history? We laid that out in our brief and we spoke with specific pages where they talk about... Are we talking about a house report? Are you talking about members of Congress? During the passage of the bill, where key sponsors of the bill say, this covers ADA and we're talking about accomplished liability, and specifically Senators Rubenfall and Schumer say, we are not talking about general promotion of prostitution. There's some legalization effort that says this. I'm sorry. There's some conference report that says this. I don't believe there's a conference report that gets into that issue at all. Senate report? Committee report that says this? I don't think any of the committee reports get into that. We're not even in the land in which most courts now allow to say that legislative history, that works. We're in the question. Your Honor, I want to be clear. We're not saying you should resolve this case on the basis of legislative history. I'm just trying to respond to the point that is there any indication of what Congress is doing here? Yes, there is. Is there any indication of the text, structure, context, precedence, hands of construction? That's exactly where I want to focus, Your Honor. If I can keep going through the text of the statute, the context of the statute, that we think provides the narrowing features for a word like promote here. Then we have to put aside the first canon, which is that plain language means. A couple of canons. Plain language means Congress means what it says or promotes instead of the narrower meaning. And two, when Congress knows how to say it and uses different words in another section, we assume that they intended a different meaning. I mean, they have a statute that defines aid and abet and uses none of these verbs. Aids, abets, counsels, commands, abuses, or procures, none of which are in here. None of which promote or facilitate isn't in there. And we don't have the string of transactional verbs. I just think promote is different from facilitate. They just naturally have different meanings. I understand why they use two words. I understand your point. And this is a criminal statute, so it makes sense. Let's look at what these criminal meanings are. But then where I'm struggling is because Congress, in criminal laws, knows how to say aid and abets and didn't use a single one of those verbs. Congress knew after Williams that if it meant sort of transactional meanings, to have sort of a related string of verbs. It, again, didn't choose a string of verbs that suggests transactionalism. In fact, promote doesn't suggest transactionalism. And so that's, and I understand your job and what you're doing. I'm just struggling with what to do with those two canons. And even if we can debate whether Black's Law Dictionary prompts ordinary meaning in a plain language analysis, what do I do if the Congress knows how to say it and it didn't do it here? So on ordinary legal meaning, the Supreme Court has said that the ordinary meaning should be taken to be the ordinary legal meaning. And so we're discussing a criminal statute. You might look first to the ordinary meaning of that word as using criminal law. To address the question of what Congress said in 18… That's great. That's great. So can you assure me that everywhere else that the word promote is used in 18 U.S.C., or in criminal provisions 21 U.S.C., it only means, well, it surely can't mean promote prostitution. So it only means what? I think, in general, we would start from the presumption that using the word promote as it's used in any number of state's accomplished liability statutes. Oh, wait. We don't assume it. Do we know how often promote appears elsewhere in criminal code? I don't have that for you. I also don't think the current provision that literally every single time it's used, that's what it's going to mean. Or even multiple times. Multiple times. Are there other places in the criminal code? I keep wanting to say 18 U.S.C., but I know it's more than that. Where promote has that meaning? I'm sorry, Your Honor. I just don't have that information for you. I wish I did. But here's how I think you can resolve this case narrowly. Promoting prostitution is its own special legal term of art. As noted, the first time this case came to appeal, and as defined in Black's Law Dictionary, promoting prostitution is pandering. There's a very specific legal meaning in this context. And we think that's the legal meaning you should ascribe to the statute. And if I could just turn to the affirmative defense in Paragraph E of 2421A, because I think it's a very strong contextual and structural indication that we have the right construction of the statute. If plaintiffs were right that promoting prostitution of another person included general advocacy in favor of prostitution, then Congress would be speaking out of both sides of its mouth. On the one hand, in Paragraph A, it would criminalize that conduct, despite the constitutional concerns that might arise. But then in Paragraph E, it would provide an affirmative defense because, to our knowledge, there is no jurisdiction in the United States that purports to make a criminal to generally advocate for decriminalization of prostitution. Plaintiffs have certainly identified no such jurisdiction. Congress passed a statute that says it's unlawful to promote prostitution. It's an affirmative defense to show that your promotion of prostitution was lawful. Under that theory, that would be perfectly fine. So Congress can ban speech as long as it makes an affirmative defense to show that this is constitutionally protected. I thought that's it. It's unlawful to promote prostitution. Affirmative defense, unless you can show promoting prostitution is lawful in that state. How is that different from the statute? I must have misunderstood your question. I'm not sure what you're driving at. Statute? My statement is more concise. Okay. It is unlawful to promote prostitution. Do you want me to add computer? It's unlawful to use a computer service to promote prostitution. Do you intend the hypo to include promotion to mean general advocacy, not as limited by traditional notions of accomplice liability? I'm trying to get hypo correct in my mind. I'm Congress. Who knows what I intend? Okay. There will be a couple floor statements that say that. Okay. So it is unlawful to use a computer service to promote prostitution. It is an affirmative defense to demonstrate that promoting prostitution is lawful where you do it. That's constitutional. Well, yes, of course. Why is that? Promotion there would be limited to a bank transactional crime. It said promoting prostitution. And so we know that... Judge Walker has a different answer. The statute just says it's illegal to promote prostitution. Of another person. Oh, I missed that. It's illegal to promote prostitution. Period. Full stop. That would ban someone from running a website that says, I think the state of Maryland should decriminalize prostitution. You would have made that a federal felony. You're saying that is constitutional. Okay. So now if I change it to say it is illegal to use a computer system to promote prostitution of another person. No further definition of promoting. And then had your affirmative defense. You think that's perfectly fine. There's still other verbs. And facilitate is not in there. No, I've given you the full text. I think we'd say, look, it's certainly a permissible construction to say promoting prostitution has a specific meaning. A longstanding meaning going back centuries meaning pandering. And if you limit it to that, it's really unconstitutional. And because it can be so limited, it must be. I'll make sure. What does facilitate and promote add to your argument that your argument lacks in the last? So we already know that facilitate has an equivalent meaning to aid and abet. And then you start thinking, well, if that has the equivalent meaning, maybe Congress would have to chose the narrower definition of promote. Secondly, facilitate and promote frequently go together in defining what a Trumpist liability is. And, again, lacks a dictionary. Facilitate the commission of a crime or promote its accomplishments. Model penal code. Aiding the commission of a crime with the purpose of promoting and facilitating the commission of the offense. Will fail you to give assistance or encouragement with the intent to thereby promote or facilitate the commission of the crime. And also, all that reads promote and facilitate the same way we might read the phrase rise and shine. Exactly. One thing. Yeah. I don't know. But that's exactly right. And it carries with it. Here's what I'm worried about, too. I'm talking about 24, 21. Capital A. Congress passed a statute that says it's illegal interstate commerce to own, manage or operate a library. With the intent to promote the prostitution of another person. That's okay. Of another person who's in there. With the intent to promote. And facilitate or promote. No. I'm sorry. One more time. I'm sorry. It sounds like our sound system is not working so well. No, I'm sure it's my fault. Okay.  So, it is illegal to own, manage or operate a library. With the intent to promote the prostitution of another person. And you can have your affirmative defense. Sure. Sure. I guess if we read promote as carrying the traditional notion of pandering, that specific meaning in that context, then yes. So, the only evidence that's needed is owning a library. Owning, managing or operating a library. If you do it with a bad intent, Congress can ban that. No action has happened. No actual promote. This is what the statute says. It is illegal to own, operate or manage a library. With the intent to promote the prostitution of another person. It doesn't say and some step is taken towards the prostitution of another person. It says it is illegal to own the library with a bad intent. Or manage. You're just hired as the lead librarian. And you have a bad intent. But you don't do anything. And you say the First Amendment says that's fine? Your Honor, I set up a collection of information whether it's online or in my house. And I do it specifically to aid and abet the crime of another person. No, no, no. See, the problem is the aid and abet definition you want to use is the actus reus. It makes it a narrower case. You'd love to be there. Right. You'd love to have that actus reus. But the only actus reus. And I don't know why it would change. I'm going to change it to own, manage or operate. Own, manage or operate a library with a bad intent. And that bad intent is I intend or I would attempt to attend or whatever, conspire to attend to do this bad thing. That's why I'm here. But in fact, it's all legitimate. It's all legitimate libraries. Fairfax County Library content. But I have a bad intent. I'm just really inept or really stupid. But I have owned, operated or managed a library with this criminalized intent. Congress can't do that. Your Honor, my apologies. I have always read this statute with the actus reus. Can Congress do what I said? Yeah, let's get that one behind us. Right. And then if I'm misreading the statute, I definitely want to hear it. Most counsel don't always like our hypotheticals, but I'm curious to hear your answer. Can Congress do that? Yes or no, in your view? I'm not saying in my mind that ends the case, but I'm curious to hear your answer. And so just because the actus reus in the hypothetical is owning, managing or operating a library. In interstate commerce. In interstate commerce. With the intent to hamper. To promote. With the intent. Make the intent as bad as you want. Put the intent on murder a prostitute. Sure. Give me your bad intent. All right? That's my intent. Yeah. But all I've done is own, operate or manage an interactive computer service or a library. And there is no other requirement that anything about that operation have anything to do with what's in my head. And so in a sense, just to be very clear, nothing about the library service is actually hampering. It's just the intent. I'm owning, managing or operating a library with a really bad intent. But no other action. I have to apologize, Rana. That is not a question I've considered before. I don't think it's something I'm prepared to take a definitive stance on in the absence of briefing or research on that. It's worrisome, isn't it? Can we at least agree it's worrisome? Well, it's confusing at the least because. Just confusing? Why is it confusing? Because I don't know why you wouldn't have thought about it. Because. This is your opportunity. Those are the kinds of questions in this First Amendment arena. You came in very confidently saying this is only aid in the bed. Well, you might assume a judge would push back with exactly the kind of question that my colleague is raising. And I would have supposed that you would have an answer for it. So, Your Honor, I have always read the statute when it says best praise being owning, managing and operating interactive computer service with the intent to promote, facilitate or promote the prosecution of another person. I've always read owning, managing and operation as promoting and facilitating the prosecution of another person. But then it just says with the intent to. And then there's nothing after it. I mean, just grammatically. This is something I've been struggling with this. But it uses with the intent to promote or facilitate the prosecution of another person as a mens rea, just like it's used in the Travel Act. That's just a mens rea. The same thing in the Travel Act. But then the Travel Act, of course, has bad actors. Right. This actually also covers attempts and conspiracies. And I would assume that because those don't come before the intent. Yeah, but it tends to sell for a conspiracy. We're we're requiring some sort of action towards the commission of the action in the base. Can we pull up the statute and look at it together? Because the problem here is it begins whoever and then it has the actus reus. Owns, manager, operates or conspires or attempts to do so. So that that refers back to owns, managers or operates. It's operating on the conspires or attempts on those verbs. And then we have a comma and then we have an intent language, which is much like the intent language in the Travel Act. It's just the intent language. She'll be fine. That's what I'm worried about with this statute. It doesn't. The only actus reus. As I read it. And I can't figure out how I can read it otherwise. I've tried. Is to own, manager, operate or attempt or conspire. Own, manager, operate and interactive computers. I don't think the plaintiff's here. I brought this suit to cover the fanciful hypothetical in which someone does their best to aid and abet the prostitution of another person. To say that a statute that has an actus reus only of owning, managing. You'll tell me if I'm wrong of only owning, operating or managing an interactive computer service with a bad intent. He said this during his opening argument. That that violates the First Amendment. Fanciful is what Congress wrote here. Unless you can tell me how to diagram this sentence to move part of the intent up into two or three lines up into the actus reus. I think I would start from the fact that Congress here is writing a criminal statute that's targeted at the prostitution of another person. It's using words that invoke more concepts of aiding and abetting liability. And one of those concepts, of course, is taking an actus reus that would, in fact, facilitate or promote the commission of the crime. They wanted to get Backpage. And what Backpage did, as you alleged and described, and I'm not obviously making any definitive determinations on this, is set up. Own, manager, operate and interactive computer service. So the way in their heads planning for it to promote prostitution. That's at least the allegations. And in fact, doing it. Tell me where 24, 21 says. And in fact, they do it. Right. Obviously, the statute doesn't say that. Your Honor, I guess what I would say is you start with the core concepts of aiding and abetting liability. And you think Congress is acting reasonably and important. Those concepts here. Secondly, I would focus on the affirmative defense, where it says that it's affirmative defense. If the promotion or facilitation of prostitution is legal. They're talking about the actual promotion or facilitation, not just acting with an intent to do something. But, in fact, doing nothing to promote or facilitate. If the affirmative defense goes to an action that, in fact, promotes or facilitates, I would think it would be reasonable to read the offense as a certain paragraph. A is doing the same. Sorry. I'm still just struggling grammatically. So, tell me how you read this sentence. So, owns, operates, and manages with an intent to do so, comma, with the intent to promote or facilitate part of that intent. Language? You know, I had a great case with the heading in the statute that you're pushing. Instead of saying promoting or facilitating, it said aiding and abetting. So, Your Honor. It doesn't say that. And the problem is we've seen so many of these cases. And aiding and abetting is a well-understood notion. And the words are used when Congress means to use them. So, Your Honor, many state statutes provide for accomplished liability. Aiding and abetting. Okay. Without using that phrase. We cite them in our brief. They say anyone who aids the commission of a crime with the intent to promote or facilitate the commission of that crime shall be held liable. Don't use the word. That's, of course, aiding and abetting. But Congress has a definition of aiding and abetting. And sometimes they will still put aiding and abetting language in a substantive statute as well. I give you that. Are you aware, does Congress commonly, when creating a new substantive crime and wanting to wrap aiding and abetting into that, not just rely on the existing 18 U.S.C. definition, do they commonly use words that have no relationship to the statutory definition of aiding and abetting already in 18 U.S.C.? Do they pull at least one of them out most of the time? I can't give you an answer to that as to, like, a fair characterization of, in the broad case when Congress does this, what sorts of words does it use. All I know is the words they have used here are in the canonical definitions of aiding and abetting liability. Well, promote's not. Promote's not. You're relying on the promote prostitution. Yes, of course it is, Your Honor. No, to be clear, facilitate and promote are both in Black Law that's shared. Promote or facilitate, not and. This is for. And. Doesn't that mean they have different meanings? So Black Law Dictionary actually says that here's the definition of aid or abet. By the way, there's a separate definition for aid and abet that says see, aid or abet. And then Black Law Dictionary also talks about how the terms aid and abet are often thought of as having overlapping meanings, although sometimes they may have slightly different sentences, but they all invoke core concepts of criminal law. The key point is that all of those core concepts of criminal law limit the statute so that it presents no constitutional basis. And, you know, we think we have the best reading of the statute, but you don't have to agree with us on that to rule in our favor. All you have to conclude is that we have a permissible understanding of this statute that would avoid the need to resolve any First Amendment questions in this case. And I think that'd be the simplest grounds on which to resolve this case. And the last part. Black Law Dictionary actually has promoter. I'm not saying promote. Promoter, a person who encourages or incites, encourages. So I'd like to make prostitution lawful in California for my friends. And then it has promoting prostitution. And then we go over to pandering. Well, pander is one who engages in pandering. And then you have the pandering definition that I think you probably want, like recruiting a prostitute. Right? Or the act or offense of distributing or selling of textual or visual materials. Openly advertised to appeal to the recipient's sexual interest. That's another definition of pandering. So, Your Honor, the definition I'm working with here is the Black Law Dictionary definition. It's available in the online Black Law version. I apologize. There might be different versions. Here's the exact quote. Well, it's the same one that was in effect at the time they passed the statute. So here's the exact quote that I have. That was in effect at the time they passed the statute. The one you're quoting from? It wouldn't be extremely focused. It's a 2018 statute. I think this is the most recent version of Black Law. So it might be out in a couple of years. I can't imagine the definition has evolved radically in that time. But here's the exact definition. Quote, aiding and abetting is, quote, to assist or facilitate the commission of a crime or to promote its accomplishments. And that's the exact definition in the model cable that it promotes. To facilitate both bear together. Let's say both bear together. The Supreme Court citing, I believe it's a Black Law dictionary case, authority in that case says, yeah, facilitate is relying on that. It has an equivalent meaning to words like aid and abet. The exact same reasoning would apply to the word promote, especially when we know that pandering is also known as promoting prostitution in many state statutes around the country as defined in Black Law. They talk in there about the action verb? So I believe that sometimes accomplished liability statutes will use promote and facilitate in the verb component of the action's necessity. And sometimes we use it in the intent component. We frequently use it both together. The last thought I want to leave you with, unless of course there's any other questions which I'm happy to take, is that if, as is true, general accomplished liability statutes throughout the United States say it is a crime to promote the crime of another person, and if prostitution is widely criminalized throughout the United States, that it promotes has the widest possible meaning. And that plaintiff wants to ascribe it to us. It would seem by their logic that all of those statutes would be unconstitutional in the First Amendment. They cited no cases at all of any court ever saying so. And by the way, those general statutes are all about general, like, aiding the conviction of a crime. Here, we're talking about one more specific thing, operating an interactive computer service. We think that we have the best interpretation of the statute, but at a minimum, it is... They're not aiding or abetting the owning, managing, or operating. That's not what they're doing. They're intending to aid or abet the own, managing, or operating. I bet you there aren't a lot of state statutes like that. I'm sorry? I bet you there aren't a lot of state statutes like that. Well, no, the state statutes are much more broad. They actually cover this already. They have... The only act that's granted is owning or operating a computer system with abet intent. In those general statutes, it's a general accomplished liability statute that prohibits aiding the conviction of a crime. Which covers, of course, this plus anything else under the sun that falls within traditional notions of aiding and abetting liability. This statute doesn't provide anything new. It's already criminal under state statutes. If I have a computer geeks business... The people that help repair computers. And I have a contract with someone who owns an interactive computer system. And I repair it. It breaks off. I'm on call. I'm on contract. Every week, I'm in there. Something's broken. I've got to fix it up. It's a very popular interactive computer system. And the owner of that interactive computer system has a really bad intent that its interactive computer system be used to promote or facilitate the prostitution of another person. In fact, nothing on the computer system does that. But the owner has this really bad intent. And I know it. I'm the computer geek tech. Okay. I know it. But I've checked. There's nothing on this computer system that looks at all like promoting prostitution. Have I aided and abetted that crime because I'm constantly repairing this interactive computer system that is operated with this intent to promote or facilitate the prostitution of another person? I'm not sure, Your Honor. I want to consult hundreds of years of case law about aiding and abetting liability. And it's actually a case to see if repairing that computer system with the right mens rea would fall within traditional notions of cost liability. Well, I know he's got the bad intent. Or no, I've got the bad intent. He knows I've got the bad intent. I forget who I am. But let's say I'm running it now because I can't really compare. I can't hardly turn it under on. So I certainly can't. Now, if we change the hypothetical and, in fact, the person with the bad intent has what you would allege back page. Let's call it bad website.com. Bad promoting and facilitating prostitution.com. Okay. And so not only does it have that terrible intent, but, in fact, the contents of the website, the interactive computer system, is pretty bad. It looks like a bulletin board to match people up. And it even has here's how to get fake passports if you're interested in transporting girls. And I'm the tech. And I come in and I know the intent and I know the content. And I come in and operate and manage and work on and repair that system every week. That would be aiding and abetting with that knowledge, would it not? It sounds like it's in the zone again. I think it's in the zone.  I think it's in the zone. I don't know. I thought you were not clear whether helping to keep the computer system going is with knowledge. I think it's getting to be this ambiguous. And we've got another problem. I should have thought that would be. No, so I don't think so, Your Honor. The Supreme Court in the Humanitarian Law Project says, look, the fact that there can be close cases doesn't mean that there's a facial constitutional problem with the statute. That's what the challenges are for. I don't think the tech repairing the computer system with full knowledge of what it was doing and what it was intended to do is a close case. It could be well within. I just don't happen to know. I apologize, Your Honor, because I haven't consulted. The fact is, I haven't consulted a case law. What is an example of aiding and abetting then? You're pretty confident that promoting or facilitating prostitution. Are you confident what counts as aiding and abetting the prostitution of another person? I am confident that what Backpage did and things like Backpage would count. Okay, but that doesn't help us interpret a general statute. So, I mean, can you tell me? I had thought your whole argument was that aiding or abetting added clarity. But now I don't understand why. I thought my tech 5.0 was easy. It still says clarity, Your Honor. There's years of case law to help figure out what counts as aiding and abetting and what doesn't. And, of course, in those specific facts in a given case, you would consult that case law and come to a determination. The only issue for this court is whether the statute covers aiding and abetting or not. Not what specific things actually constitute aiding and abetting or not. That can be handled in as-applied cases. This is really just about statutory interpretation. Does this statute cover aiding and abetting an underlying crime of exchanging sex for money? We've provided you all the reasons, both the definitions of the words themselves and also the sexual indications, as to why we think that's true. But, again, all we have to conclude is that it's a miscible interpretation. And then, like in the constitutional avoidance, we would win this case. I've asked you a lot of questions. My colleagues have any more? No. Do you mind if I ask you one? Sorry. One more. No, it's on this. I can't until one. This. Oh, go ahead. We have lots of time. The arguments they make about the change to the scope of Section 230 immunity. Yes. And they have this sort of selective withdrawal argument. And what I'm a little confused about is that the prior immunity, by its terms, didn't apply if it was a violation of federal law. Correct. And promoting or facilitating, well, aiding or abetting the prostitution in interstate commerce, the interstate commerce component, was unlawful even before it was enacted. Correct. In fact, you say in your brief, and they say, I keep getting confused about this, that FOSTA didn't change what was illegal. It just sort of changed, I guess, who can prosecute or civil remedies. That's absolutely correct. Yes. Everything that's prosecutable, I believe, under 2421A was already prosecutable under the Travel Act. The main reason for enacting 2421A as a separate section is that it would be cross-referenced to exempt only certain state crimes from Section 230C's protections, not everything under the Travel Act. But, of course, it does more than just that. And I don't want to discount that. Of course, it provides for civil liability. It provides for, I believe, higher punishments than were available under the Travel Act itself. And put aside the civil remedy, the same thing could have been accomplished by just amending 230, just as to the immunity withdrawal, amending it to say it doesn't extend to anything contrary to federal or state law or violation. I think it's a violation of federal law or state law. That's effectively what's happened as to allowing. 230 was an immunity, before this, was an immunity, not just civil suits, but criminal prosecutions by states. That's correct. We have a qualification that depends on the scope of 230C, which, of course, is an act of litigation in the U.S. Supreme Court. Right. But what Congress was doing was clarifying that the First Circuit, in the Backpage case, had misunderstood the scope of 230C. It fixed that in 230E to allow state prosecutions of state crimes. I don't think they misunderstood. It does say federal law in here. But Congress decided it wanted to change that. Congress said it was clarifying, but I understand that that could be a problem. That's a lot of clarifying. So, certainly, then, as to federal law, there was no giving and taking back of immunity. And then, what I'm worried about is sort of constitutionalizing the concept of you grant an immunity and then Congress can never amend it. That's a big thing to do. But they do raise a sort of selectivity argument. What am I to do with it? Congress can't sort of pick on somebody. It couldn't, I assume, amend it to say Backpage doesn't get it. Right. I don't know. I'm not here to defend that opposition. Right. So, how would you answer an argument that says that's effectively Backpage and its relatives can't do this anymore as to state law prosecutions? Congress is entitled to make the determination that there are certain crimes that are so troubling that we need to get all our law enforcement partners on board. We can't just have federal prosecution. This is the purpose behind the statute. I mean, I think all 50 state attorneys general sent a letter to Congress saying, please don't tie our hands. We need to go after these people that are sex trafficking children. I think Congress is perfectly entitled to make a determination that, you know, in addition to federal prosecution, state prosecution for such things should be allowed. I don't know of any precedent that would call into question that judgment. Now, I do have a question. Just out of curiosity, the plaintiff mentioned that there haven't been any state prosecutions. Is that your sense as well? I have no sense of that, Your Honor. I mean, it would depend on – I don't have information at my fingertips. My knowledge is a reporting requirement that the state, when they prosecute somebody, it invokes this exception to 230C's immunity, but they've been reported to us. So, I just do not – I apologize. I mean, I know this either, but do you know if the civil remedies provision has been able to be used? I mean, that's a statute – it's a lot because the statute's been around since 2018, and it's usually these first moment challenges happen pretty fast. Right. I'm just curious as to, four years in, do you know if there's been civil remedy actions? I cannot recall coming across a reported case in which I read about that being invoked. It doesn't mean it hasn't happened. For sure. Thank you very much. Thank you very much, Your Honor. We'll give you four minutes for rebuttal. Thank you, Your Honor. I'll try and be brief. I mentioned at the outset of my argument that it was remarkable that neither the district court nor the government cited any of the First Amendment cases involving regulation of the Internet, but I also noted that there was one small exception to that that I would hope to get back to, and that's what I want to talk about just for a minute now. The only reference to any of those cases that I alluded to is at page 40 of the government's brief, where it cites Ashcroft v. Free Speech Coalition for the proposition that courts decide what a statute prohibits, not what it could prohibit. Now, we've decided for a minute that that's not what Ashcroft v. Free Speech Coalition says. I think it's important to recognize what that case did. It said that that law is a stark example of why we allow facial challenges to speech regulations, and then it went on to assert that that law could apply to even the Hollywood production of Romeo and Juliet on that basis, the law to be appropriate and proper. The way that ties into this case specifically is that the statute that was upheld in Williams was passed in reaction to Free Speech Coalition v. Ashcroft. And the language in Williams that was upheld was especially that string of verbs that explained what the crime was. So the backdrop for adopting FOSTA is that Congress, after FOSTA—I'm sorry, Congress, after Williams, and after the Supreme Court had said that the terms promote and facilitate and use in isolation are capable of multiple and wide-ranging meanings, Congress then adopted a statute regulating Internet speech that simply uses those terms in isolation, which means it specifically undid what Congress had tried to do in stating Protect Act. Congress then added a provision to the manner, which chose to exclude the verbs that had existed in that law, narrowing its scope, since 1910. And, you know, in the midst of Supreme Court law, there's unchallenged. It says that the law's regulating speech must be drafted with precision. And on top of all of that, Congress focused on, in FOSTA, not only adopting these new properties, but doing so enough that it increases risks for online intermediaries. We're using hector's veto for orders of prosecutor's veto. In other words, the catcher had told me FOSTA represents the worst of both worlds. And as a result, it's unconstitutional and should be adjoined. Let me ask a couple questions. One is, if you set aside your ex post facto argument, and if you set aside your 230 immunity being required— So just put those aside for a second. If we adopt the government's narrow aiding and abetting reading of FOSTA, do you concede that there's no constitutional problem with the statute? Well, there's a constitutional problem in that there has to be a language in the statute to get to that understanding. And that was— Don't—if we read—I know you think we shouldn't read that language in. Maybe we won't read that language in. But if we read the statute, if we read it narrowly to only include aiding and abetting, do you concede that there's no constitutional problem? You're asking about—I'm sorry. Are you asking about the mens rea or an act? Yes. The whole— The government started its argument. You heard him. The government started its argument, and he said, if we're right about how to interpret the statute, the plaintiffs concede the First Amendment has not been violated. And do you agree? Well, what I'm struggling with, and I'm not sure I'm going to be able to get your question wrong, is that it seems like the question is, if we assume the law is constitutional, then it's constitutional. No, no, no. If we assume that it's limited to aiding and abetting. And that's where the disconnect that Judge Millett was focusing on between actus reus and mens rea becomes critical, because it doesn't define a criminal actus reus other than owning, operating, or managing an online and interactive computer service. And so the point to say it then goes to aiding and abetting makes no sense, because it's simply saying we are, in the hypothetical proposal by Judge Millett, owning, managing, or operating a library with really bad intent. Okay, let me— Aiding and abetting intent. I'm going to read the Mann Act, or the key part of the Mann Act. I think this is the text. And I'm going to stop when it gets to the mens rea. I'm going to stop when it gets to the intent. Whoever knowingly transports any individual in interstate or foreign commerce or in any territory or possession in the United States with intent, and then it defines the intent. So, even now, the interstate commerce book, whoever knowingly transports any individual, that's the actus reus. Is that right? I'm not sure which section you're reading from. I was looking at the section of 2422A, which applies to anyone who knowingly persuades, induces, entices, or coerces any individual to travel in interstate commerce to engage in prostitution. Again, it's an example of whether the law includes in the actus reus a more precise definition. So I think this is— 2421. Yeah. What are you referring to now? 2421. 18 U.S.C. 2421, the general provision. Yeah. Whoever knowingly transports any individual— Oh, that's not what it is. Then there's the interstate commerce— 2421A, small a? Yeah. Okay. Whoever knowingly transports any individual— Then there's the interstate commerce book and followed by the men's ram. So whoever knowingly transports any individual is the actus reus. Is that right? Yes. And you have a constitutional right to travel, the Supreme Court has said, right? Yes. How is—does the man act constitutional? Do you have a constitutional right to transport—a First Amendment right or a constitutional right to transport someone else? I think that's where the focus on whether or not this is a regulation of speech becomes important because of the imprecision around speech. Knowing whether or not your speech falls within that category is a much more difficult and nuanced question than whether or not you have physically transported someone across straight lines. I appreciate that. Any other questions?  Thank you. We're going to do it much longer than we anticipated, but we appreciate your help working through this complicated statute and the cases submitted.
judges: Millett, Walker, Edwards